# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MAJIC WINDOW COMPANY,

    Plaintiff/Counter-Defendant,

v.

                                                      Case No. 06-CV-12600-DT

MILGARD WINDOWS,

    Defendant/Counter-Plaintiff.
_____/

**OPINION AND ORDER DENYING DEFENDANT MILGARD WINDOWS' "MOTION FOR SUMMARY JUDGMENT ON ITS COUNTERCLAIM"**

Pending before the court is Defendant/Counter-Plaintiff Milgard Windows' ("Milgard") "Motion for Summary Judgment on its Counterclaim" filed on May 18, 2007. The motion has been fully briefed and the court concludes that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will deny the motion.

## I. BACKGROUND

Plaintiff/Counter-Defendant Majic Window Company ("Majic") instituted this action against Milgard on April 3, 2006, alleging breach of contract, fraud and unjust enrichment arising out of a series of contracts. Pursuant to the contracts, Milgard, a manufacturer of custom-made windows, agreed to manufacture and sell windows and

1

related window products to Majic, a retailer of custom-made windows.[1] (*See* Majic's Compl.; Majic's Resp. at 14.) In Majic's usual course of business, it would enter into a contract with a consumer, agreeing to provide the consumer with custom-made windows. (*Id.* at 14-15.) Majic would then order the windows from a manufacturer such as Milgard. (*Id.*)

The course of events giving rise to this action occurred between approximately August 2004 and December 2005.[2] (Declaration of Todd Wagenblast, Milgard's Ex. 1.) During that time, Majic ordered windows, doors and replacement parts from Milgard via a series of purchase orders. (*Id.*) In response to each purchase order, Milgard sent an acknowledgment clarifying the order, to which Majic replied by signing and returning the acknowledgment. (*Id.*) Milgard would then manufacture the products according to the specifications and ship the order, along with an invoice, to Majic. (*Id.*) Milgard provided a warranty with its products that obligated Milgard to replace and/or repair any defective product for a period of ten years. (*See* Warranty, Majic's Ex. 2.) Milgard does not contend that the warranty is inapplicable to the products at issue. (*Id.*)

Majic initiated this action on April 3, 2006, asserting that Milgard was in breach of contract for failing to provide products in conformity with the contract, failing to provide

---

[1]This action was filed in Wayne County Circuit Court and was removed to this court on the basis of diversity jurisdiction, in accordance with 28 U.S.C. § 1332. (*See* 6/12/06 Notice of Removal.) Pursuant to a stipulated order, Majic's fraud claim was dismissed without prejudice. (3/19/07 Stipulated Order.)

[2]Majic indicated that it ordered products from Milgard "for a brief period of time, but exact dates are unknown." (Declaration of Allen Brooks, Majic's Ex. 1.)

repair parts as required by warranty, and failing to reimburse Majic for labor costs.[3] (Majic's Compl.) Milgard filed a counterclaim on June 19, 2006, alleging breach of contract and unjust enrichment. (Milgard's Answer and Countercl.) Milgard maintained that it fully performed its contractual obligations and that Majic breached by failing to pay $65,722.96 worth of invoices for products that it accepted and sold to customers. (*Id.*) On May 18, 2007, Milgard filed a motion for summary judgment on its counterclaim. (Milgard's Mot.)

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do

---

[3]Majic alleges that it has suffered damages in excess of $160,000 due to Milgard's breaches. (See Majic's Compl. at § 10.) Majic indicates that it was forced to incur costs and make concessions in order to accommodate and pacify customers who were disgruntled with products manufactured by Milgard. (Majic's Resp. at 11.) Specifically, Majic complains of thirty-eight customers who bought from it deficient Milgard products, which Milgard has yet to repair or replace, despite Majic's requests. (*Id.*) Recently, Majic filed a third-party complaint against Milgard in state court (Case No. 07-CO-2389) because Milgard failed to cure defects in its products. (*Id.*)

3

not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party must first show the absence of a genuine issue of material fact. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex*, 477 U.S. at 323). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). They must put forth enough evidence to show that there exists a genuine issue to be decided at trial. *Plant*, 212 F.3d at 934 (citing *Anderson*, 477 U.S. at 256). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52 (1986).

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment – the disputed factual issue must be material. *See id.* at 252 (emphasis and alteration in original) (citation omitted) ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'"). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an

4

essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

## III. DISCUSSION

### A. The Contracts

As an initial matter, neither party disputes that there was a contractual relationship between the parties that was governed by the Uniform Commercial Code. (*See* Milgard's Mot. at 7-10; Majic's Resp. at 11-15.) Majic's purchase orders constituted offers to purchase and invited acceptance. *DTE Energy Techs., Inc.* v. *Briggs Elec., Inc.,* No. 06-12347, 2007 WL 674321, at *4 (E.D. Mich. Feb. 28, 2007) (quoting *Aaron E. Levine & Co. v. Calkraft Paper Co.,* 429 F.Supp. 1039, 1048 (E.D. Mich. 1976)) (stating that "[a]s a general rule orders are considered as offers to purchase"). Milgard's act of shipping the products deliniated in the purchase order, or its promise to ship the products, constituted an acceptance. Mich. Comp. Laws § 440.2206(1)(b) ("[A]n order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or nonconforming goods . . . ."). Further, the parties' transactions involved the sale of goods and are governed by the UCC. (*See* Mich. Comp. Laws § 440.2102.)

Although the parties agree that they were in a contractual relationship with one another, they disagree with respect to whether their relationship was governed by one installment contract or a series of single delivery contracts. The buyer's rights of rejection and revocation in an installment contract differ from those pertaining to single delivery contracts. *Midwest Mobile Diagnostic Imaging, L.L.C., v. Dynamics Corp. of*

5

*America*, 965 F. Supp. 1003, 1010 (W.D. Mich. 1997). Majic asserts that there was not a series of separate contracts, but only one installment contract. (Majic's Resp. at 11-13.) Majic appears to base its contention on the fact that the products for each customer/purchase order were delivered separately from the products pertaining to another customer/purchase order. Milgard, on the other hand, argues to the contrary, pointing out that each purchase order bore no relation to the other and each called for a single delivery, thus forming multiple single delivery contracts. (Milgard's Reply at 1-5.)

Section 440.2612(1) provides: "[a]n 'installment contract' is one which requires or authorizes the delivery of goods in separate lots to be separately accepted, even though the contract contains a clause 'each delivery is a separate contract' or its equivalent." Milgard asserts that there were no purchase orders covering multiple custom-window jobs; each purchase order pertained to one customer. (Invoices, Milgard's Ex. 2; Milgard's Reply at 4.) Significantly, all evidence presented suggests that the products comprising one purchase order were not to be separately delivered or accepted. Rather, each purchase order appears to call for a single delivery. Nonperformance with respect to one purchase order had no effect on another purchase order because the purchase orders were not related to one another. There is no evidence to suggest, nor does Majic assert, that any contract called for delivery in installments or that the parties' course of dealing called for delivery in installments. Given that each purchase order constituted an offer, each corresponding shipment constituted an acceptance and, undisputedly, none of the products comprising one contract were separately delivered, the series of contracts at issue were single delivery contracts as a matter of law. *See*

*Midwest Mobile Diagnostic Imaging, L.L.C.*, 965 F. Supp. at 1010 (stating that an installment contract requires the delivery of the items "in separate groups at different times").

### B. Acceptance of Goods

Between August 2004 and December 2005, Milgard shipped products to Majic pursuant to a series of purchase orders. (Declaration of Todd Wagenblast, Milgard's Ex. 1.) Milgard alleges that Majic "never rejected them or notified Milgard that it intended to do so," and that Majic failed to pay invoices for the products in the amount of $65,722.96. (*Id.*) Majic admits to receiving the products and selling them to its customers, who had already placed an order for the products prior to their manufacture. (Declaration of Allen Brooks, Majic's Ex. 1.) Majic also asserts that as soon as it became aware of the defects in Milgard's products, it promptly notified Milgard, requesting that Milgard correct the defects. (*Id.*) Majic maintains that Milgard did not comply, thus prompting Majic to bring this action. (*Id.*) Majic admits to having an unpaid balance with Milgard, but contends that it notified Milgard that it was withholding payment because Milgard failed to cure the defective products as it was required to do pursuant to the contract and the applicable warranties. (*Id.*; Majic's Resp. at 11-15.)

Section 440.2606 governs the acceptance of goods, providing, in pertinent part:

> (1) Acceptance of goods occurs when the buyer
>
> (a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or
>
> (b) fails to make an effective rejection (subsection (1) of section 2602), but such acceptance does not 0occur until the buyer has had a reasonable opportunity to inspect them; or

> (c) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

The existence of acts tending to show an acceptance or rejection of goods is for the jury to determine. *Valley Die Cast Corp. v. A.C.W., Inc.*, 181 N.W.2d 303, 331 (Mich. Ct. App. 1970). Despite the fact that Majic sold the goods to customers, the absence of various relevant facts from the record is such that the court is unable to hold that, as a matter of law, Majic rejected all of the goods at issue. For instance, it is not clear how long, if at all, Majic was in possession of the products before sending them on to its customers, whether it sent all of the products to its customers before giving notification of defects to Milgard, whether it was Majic or its customers who first noticed the defects, or how much time elapsed between Majic's receipt of the products, its discovery of defects and its notification to Milgard of defects. Because it is Milgard's motion for summary judgment, it is Milgard's burden to establish that there are no issues of material fact. *See Sagan*, 342 F.3d at 497. The evidence presented by Majic, which tends to show that Majic notified Milgard of defects within a "reasonable" time, coupled with the aforementioned uncertainties prevent the court from concluding that there is no issue of material fact with respect to whether Majic rejected[4] the goods. Moreover, even if it can be established that Majic failed to reject the goods, Milgard's motion still fails if a reasonable jury could find that Majic revoked the goods.

---

[4]Section 440.2602 governs rejection and provides, in relevant part:
(1) Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller.

8

## C. Revocation of Goods

Section 440.2608 provides:

> (1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it
>
> (a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
>
> (b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

At the outset, the court notes that whether a buyer's revocation is in conformity with § 440.2608 is a question of fact for the jury. *Leila Hosp. and* Health *Center v. Xonics Medical Systems, Inc.* 948 F.2d 271, 276 (6th Cir. 1991). As is discussed below, Majic presents sufficient evidence such that the court cannot conclude, as a matter of law, that Majic did not revoke any of Milgard's goods.

### 1. Timeliness of Revocation

Throughout its response, Majic maintains that, upon discovery of the defects, it promptly notified Milgard and requested that Milgard correct the defects. (*See* Majic's Resp. at 1-15.) Majic further explained that the nature of its relationship with Milgard was such that after Milgard delivered the products, Majic would later advise Milgard of

9

any nonconformities or defects as they became known, and that such a protocol was reasonable in light of industry standards and the course of dealing between the parties. (*Id.*)  Results in cases considering whether specific periods of delay in revoking acceptance were reasonable under the circumstances have depended upon the particular facts and circumstances of the case; generally, no particular period of time is per se reasonable or unreasonable.

In support of its contention that it timely notified Milgard of the defects, Majic attaches various documents to its response motion.  First, Majic points to a letter that one of its representatives sent to a Milgard representative.  The letter, dated October 28, 2004, provides:

> As of October 25, 2004 Thomas/Doris Franklin had there [sic] 12 [M]ilgard windows put in there [sic] house.  Due to the fact that there is not enough room on the service page to put all there [sic] problems we are adding this to the file.  Sarah please get all of this ordered asap, thanks."

(10/28/04 letter from Majic to Milgard, Majic's Ex. 6.)  The letter went on to enumerate multiple defects with the windows, including: malfunctioning locks, windows not staying open, faulty screens and scratched windows.  It appears to the court that the letter, dated a mere three days after installation, suffices as a timely notification to Milgard that its products were defective in various ways and that Milgard was expected to correct the defects.  Another document, dated November 2, 2004 was entitled Milgard's "Service Request" form, and was the means by which Milgard's customers brought a defective product to Milgard's attention so that Milgard could repair or replace it.  ("Service Request Form," Majic's Ex. 6.)  On the form, Majic wrote, "problems too numerous to

list," attached a separate document enumerating the customer's complaints and directed Milgard to "set appt with customer ASAP."  (*Id.*)  In another document directed to a Milgard representative and entitled "Customer Service Call-in Sheet," Majic again lists various defects with Milgard products and indicates that the Milgard representative spoke with the complaining customers concerning repairing the defects.  ("Customer Service Call-in Sheet," Majic's Ex. 6.)  In a different document, apparently a list of "Customer File Notes" kept by Majic, Majic documents product defects and Majic's correspondence with Milgard concerning the defects.  ("Customer File Notes," Majic's Ex. 6.)  The dates of entry range from July 23, 2004 to April 25, 2006.  (*Id.*)

Additionally, Milgard's Finance Manager testified that Majic's General Manager complained to him of nonconforming goods and improper servicing of goods.  (Todd Wagenblast Dep. at 26.)  Milgard's Finance Manager further testified that he had multiple conversations with Milgard's plant manager regarding what would be done about Majic's complaints.  (*Id.* at 27.)  It is unclear, however, exactly when these conversations took place.

Finally, according to Milgard's Service Manager, Majic was not expected to return defective products (which comports with common sense in that many, if not most, products would have been permanently installed in the homes of the ultimate consumers before discovery of alleged defective mechanisms, etc.), but was expected merely to notify Milgard so that Milgard could repair or replace the defective product, regardless of who was at fault for the defect.  (Gilberto Bermudez Dep. at 52-53, Majic's Ex. 5.)  Majic asserts that it "gave Milgard more than a reasonable opportunity to cure

11

and Milgard has failed and refused to cure [d]efects it was made aware of years ago. . . Majic tendered monies to Milgard for [p]roducts, until such time that it became apparent that Milgard either could not or would not cure [d]efects." (Majic's Resp. at 14.) It has been held that a buyer's reliance on a seller's warranty or assurances that a defective product will be fixed is a factor to be considered in determining the reasonableness of delay in revoking. *Leila Hosp. and Health Center*, 948 F.2d at 277. In the instant case, Majic appears to have relied on Milgard's warranty and assurances that it would replace or repair defective products, and such reliance further supports Majic's argument that it acted reasonably in its revocation dealings with Milgard. The totality of the evidence satisfies the court that a reasonable jury could find that Milgard timely revoked its acceptance of at least a portion of Milgard's products.[5]

### 2. Substantial Noncompliance of Goods

In addition to establishing timeliness, the buyer must also establish that the defect substantially impairs the goods' value to him. Mich Comp. Laws § 440.2608(1). The defects here, at least a significant portion of them, appear to be meaningful and widespread. Majic attaches to its response a list of thirty-eight disgruntled customers, along with a description of their defective products, which Milgard has yet to cure. ("Customer Information," Majic's Ex. 3.) The defects range in nature from windows that are a different size than what was ordered, to scratched windows, to windows that do

---

[5]The court recognizes that a complaint is not tantamount to a rejection or revocation. There is evidence in the record indicating that Majic did more than complain about defective products; it informed Milgard of the defect with specificity, informed Milgard that customers were dissatisfied and, most importantly, it expected and requested that Milgard correct the defect.

12

not move properly to windows that are missing various parts.  (*See* "Customer Information," Majic's Ex. 3.)  One customer in particular has filed suit against Majic for providing defective goods, these being goods that Majic says Milgard was repeatedly requested to correct to no avail.  (Majic's Resp. at 11, 13.)  Majic has filed a third-party complaint against Milgard in that action.  (*Id.*)  Milgard presents no evidence that it attempted to cure these or other defects.  Further, Milgard does not present any evidence to dispute Majic's contention that the products were defective, that the products substantially impaired their value to Majic, or that the defects were Milgard's fault.

### 3.  Lack of Substantial Change in Condition of Goods

Another requirement of proper revocation is that the buyer revoke "before any substantial change in condition of the goods which is not caused by their own defects." Mich. Comp. Laws § 440.2608(2).  Milgard does not allege, and this court is not persuaded, that the products underwent a substantial change in condition that would preclude revocation.  Even with respect to the window products that were installed, there is no evidence to suggest that the products were damaged after leaving Milgard's warehouse, that the products had been installed for an extended length of time before defects were made known to Milgard, or that the products could not be uninstalled and returned to Milgard in an unharmed condition.

### D.  Sufficiency of Majic's Evidence

The court does recognize that the evidence presented by Majic is limited and imperfect.  For instance, the evidence does not make clear exactly how much time

elapsed between the time when Majic discovered or should have discovered the defects and when it informed Milgard of the defects. Additionally, although the defective products spanned multiple purchase orders/contracts, Majic has presented evidence of rejection or revocation only with respect to a portion of the purchase orders/contracts. Nevertheless, the evidence and all reasonable inferences therefrom must be construed in favor of the non-moving party, which party need not prove its entire case to survive a motion for summary judgment. *Sagan,* 342 F.3d at 497. For the non-movant to survive summary judgment, there need only be evidence such that a reasonable jury could find for the non-movant. *Anderson,* 477 U.S. at 252. Based on the totality of the evidence, the court is persuaded that a reasonable jury could find that Majic timely revoked at least a portion of Milgard's products, thus precluding a finding that there is no genuine issue of material fact with respect to Milgard's counterclaim.[6]

## IV. CONCLUSION

For the reasons stated above, IT IS ORDERED that Milgard's "Motion for Summary Judgment on its Counterclaim" [Dkt. # 36] is DENIED.

                                               s/Robert H. Cleland
                                               ROBERT H. CLELAND
                                               UNITED STATES DISTRICT JUDGE

Dated: July 24, 2007

---

[6] A buyer need not pay for goods revoked. Mich. Comp. Laws § 440.2711(1). Accordingly, because Milgard's counterclaim seeks payment from Majic for goods which Majic claims to have revoked, a finding of revocation, even if only for a portion of the goods, precludes a finding that there is no genuine issue of material fact with respect to Miglard's counterclaim.

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 24, 2007, by electronic and/or ordinary mail.

                                             s/Lisa G. Wagner
                                             Case Manager and Deputy Clerk
                                             (313) 234-5522